# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

FLINT HILLS RESOURCES LP,

Plaintiff,

v.

LOVEGREEN TURBINE SERVICES, INC.,

Defendant/Third-Party Plaintiff,

v.

HYDROCHEM INDUSTRIAL SERVICES,

Third-Party Defendant.

Civil No. 04-4699 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER**

---

Charles F. Webber, Rikke A. Dierssen-Morice, and Michael M. Krauss, **FAEGRE & BENSON LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for plaintiff Flint Hills Resources LP.

Curtis D. Smith and J. Vincent Stevens, **MOSS & BARNETT, PA**, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402, for defendant and third-party plaintiff Lovegreen Turbine Services, Inc.

Amy M. Coniaris and David M. Dahlmeier, **FOLEY & MANSFIELD, PLLP**, 250 Marquette Avenue, Suite 1200, Minneapolis, MN 55401; and Dean A. LeDoux, **GRAY PLANT MOOTY MOOTY & BENNETT, PA**, 80 South Eighth Street, Suite 500, Minneapolis, MN 55402, for third-party defendant Hydrochem Industrial Services.

Lovegreen Turbine Services, Inc. ("Lovegreen") moves for summary judgment on Flint Hills Resources LP's ("FHR") claims for negligence and breach of contract.[1]  As explained below, the Court denies the motion.

## BACKGROUND

FHR is a refining and chemicals company that owns and operates a crude oil refinery near Rosemount, Minnesota.  On August 13, 2003, FHR and Lovegreen entered into a Field Services Agreement (the "Agreement").  Under the Agreement, Lovegreen agreed to perform an overhaul on a gas compressor.  The overhaul required Lovegreen to dismantle, inspect, service and rebuild the compressor.  Lovegreen personnel began working on the overhaul on September 8, 2003, working on the compressor around the clock in two 12-hour shifts.  In connection with their work on the compressor, Lovegreen personnel brought a 50-pound container of cloth rags to the job site, and they used the cloth rags to wipe the compressor during the overhaul.

On September 24, 2003, the overhaul was complete, and Lovegreen sent an employee to pick up Lovegreen's tools and materials, including the remaining cloth rags.  On October 2, 2003, FHR reactivated the compressor, and the compressor seemed to be running normally.

---

[1] In an Order dated May 2, 2005, the cases *Flint Hills Resources LP v. Lovegreen Turbine Services, Inc.*, Civil No. 04-4699 (JRT/FLN), and *Tonicstar Limited v. Lovegreen Turbine Services, Inc., and Flint Hills Resources LP*, Civil No. 05-533 (JNE/JGL), were consolidated for pretrial purposes pursuant to Fed. R. Civ. P. 42(a), and the Court heard dispositive motions filed in both cases on April 18, 2006.

One week later, on October 9, a portion of the refinery experienced a charge pump failure.  The compressor is part of that portion of the refinery, and the charge pump failure caused the compressor to shut down.  FHR re-started the compressor that same day, however, it was making a lot of noise and seemed to be excessively vibrating.  FHR shut down the compressor because of the noise and vibration.

After FHR shut down the compressor, FHR inspected the compressor to see what the problem was, and determined that a cloth rag was stuck inside.  FHR alleges that the cloth rag was one of Lovegreen's, and that Lovegreen personnel had left it in the compressor after they finished the overhaul.  FHR employees began working on the compressor to remove the cloth fragments and return the compressor to operation.  FHR did not call Lovegreen prior to inspecting or repairing the compressor.  FHR claims that it did not call Lovegreen because it wanted to get the compressor running as quickly as possible.

Although FHR did not call Lovegreen prior to inspecting the compressor, FHR employees documented their inspection and repair of the compressor.  They photographed the compressor while it was being disassembled, documented the rag fragments lodged inside the compressor, and saved the cloth fragments that were removed from the compressor.  The compressor was returned to service on October 14, 2003, having been idled for five days.  FHR claims that as a result of the compressor failure and subsequent shutdown for repair, FHR incurred business interruption damages in excess of $6.5 million.

It is undisputed that Lovegreen used cloth rags in performing its work under the Agreement.  It is also undisputed that Lovegreen did not have exclusive access to the area where the compressor was located.  For example, another contractor, HydroChem Industrial Services, Inc. ("HydroChem") hydroblasted the deck near the compressor while Lovegreen was working on the overhaul.[2]

## ANALYSIS

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in the absence of any genuine issue of material fact, and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible

---

[2] HydroChem moved to amend the scheduling order, and in an Order dated April 11, 2006, the Magistrate Judge denied the motion.  HydroChem appeals the Magistrate Judge's order denying its motion to amend.  *See* Docket No. 90.  "The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential."  *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D . Minn. 1999).  This Court will reverse such an order only if it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).  Here, the Court has reviewed HydroChem's objection and Lovegreen's response to the objection, and finds that the Magistrate Judge Order is not clearly erroneous or contrary to law.  Accordingly, the Court affirms the Magistrate Judge Order.

evidence that specific facts exist creating a genuine issue for trial. *See*, *e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).

## II.   LOVEGREEN'S MOTION FOR SUMMARY JUDGMENT

### A.   Negligence

Summary judgment in a negligence action is appropriate if the record does not support any one of the elements required to establish the negligence claim: (1) duty; (2) breach of that duty; (3) injury; and (4) proximate cause. *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001). The existence of a duty is a question of law. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn. 1985). Under Minnesota law, a contractor owes a duty, independent of the contract itself, to perform in a workmanlike manner. *See Arden Hills N. Homes Ass'n v. Pemtom, Inc.*, 475 N.W.2d 495, 500 (Minn. Ct. App. 1991). FHR claims that Lovegreen acted negligently by leaving a rag in the compressor.

Lovegreen makes three arguments in support of its motion for summary judgment on FHR's negligence claim. First, Lovegreen argues that FHR's negligence claim fails because it does not identify or offer expert testimony establishing the duty of care, or that the duty was breached. However, expert testimony is not always necessary to establish negligence. *Roettger v. United Hospitals of St. Paul, Inc.*, 380 N.W.2d 856, 860 (Minn. Ct. App. 1986). "The test of whether expert testimony is required is whether the matter to be dealt with is so esoteric that jurors of common knowledge and experience cannot form a valid judgment as to whether the conduct of the parties was reasonable." *Id.*

(citation and internal quotation omitted).  Further, "whether an expert opinion is necessary to assist the trier of fact in determining whether the standard has been met is at the discretion of the trial court."  *Seaton v. County of Scott*, 404 N.W.2d 396, 399 (Minn. Ct. App. 1987).

The Court concludes that under Minnesota law, Lovegreen had a duty, as a contractor, to perform work in a workmanlike manner.  FHR argues that Lovegreen breached that duty by leaving a rag in the compressor.  Although FHR asserts that expert testimony is not necessary to assist the trier of fact in determining whether leaving a rag in the compressor constitutes a breach of that duty, FHR also submitted an expert report from D. Scott Harding, Ph.D., a mechanical engineer with extensive experience in the refining industry, detailing his opinion that Lovegreen breached the standard of care.  The Court finds that, even assuming that expert testimony is necessary to assist the trier of fact here, FHR has provided expert testimony showing that Lovegreen breached the duty of care.  The Court therefore finds that summary judgment on this ground is not appropriate at this time.

Second, Lovegreen contends that FHR's negligence claim should be dismissed, because it has failed to offer any direct evidence showing that Lovegreen's alleged negligence was a direct cause of FHR's damages.  Although "speculation and conjecture" are insufficient to establish liability in a negligence action, direct evidence is not necessary.  *Ill. Farmers Ins. Co. v. Brekke Fireplace Shoppe, Inc.*, 495 N.W.2d 216, 220 (Minn. Ct. App. 1993).  Rather, the proof need only justify an inference of fact, and inferences may be drawn from circumstantial evidence.  *Id.* at 220-21.  The inferences

must be reasonably supported by the available evidence, and the inference of negligent causation must outweigh contrary inferences.  *Id.* at 221; *see also Chisholm v. Bohannon*, 558 S.W.2d 446 (Tenn. Ct. App. 1977) (the defendants acted negligently in repairing the plaintiff's machine, where the plaintiff offered circumstantial evidence showing that the defendants repaired the machine in their shop, and that a shop rag was left in the machine, causing damage to the machine).

Here, FHR has presented ample circumstantial evidence that Lovegreen personnel actually caused the rag to enter the compressor.  Lovegreen brought 50 pounds of cloth rags with it to its work site at FHR, Lovegreen personnel used the cloth rags to wipe the compressor in the course of the overhaul, and Lovegreen admits that it left behind at least one cloth rag on the deck near the compressor.  In addition, although other contractors performed some work in the vicinity of the compressor during that timeframe, Lovegreen personnel were working on the compressor 24 hours per day.  Viewing the facts in the light most favorable to FHR as the non-movant, the Court finds that FHR has presented sufficient circumstantial evidence which would permit a jury to infer that Lovegreen personnel used a cloth rag while working on the compressor, and left it behind in the compressor, causing the compressor to fail and requiring FHR to shut it down and remove the rag fragments.  Therefore, summary judgment is also inappropriate on this ground.

Third, Lovegreen argues that to the extent FHR seeks to rely on the doctrine of res ipsa loquitor, summary judgment is appropriate because FHR has failed to show that Lovegreen had exclusive control over the compressor.

The three elements of res ipsa loquitur are that (1) the event must not generally occur unless someone is negligent, (2) must be caused by an instrumentality within the exclusive control of the defendant, and (3) must not have been due to any voluntary action or contribution of the plaintiff. *Leuer v. Johnson*, 450 N.W.2d 363, 364 (Minn. Ct. App. 1990) (citing *Spannaus v. Otolaryngology Clinic*, 242 N.W.2d 594, 596 (Minn. 1976)). Exclusivity for the purposes of res ipsa loquitor "is sufficiently shown if the defendant had control of the instrumentality at the time of the negligent act, even if control might have not been exclusive when the injury occurred." *Stelter v. Chiquita Processed Foods, L.L.C.*, 658 N.W.2d 242, 248 (Minn. Ct. App. 2003).

Here, FHR contends that Lovegreen had exclusive control over the compressor while it was performing work on it. FHR asserts that Lovegreen was the only contractor hired or authorized to work on the compressor, and that based on witness accounts and Lovegreen's billing statements, Lovegreen personnel were working on the compressor around the clock. Lovegreen responds, however, that it did not have exclusive control over the compressor, because it was not the only contractor who had access to the area where the compressor was located. Rather, asserts Lovegreen, many individuals, including other contractors and FHR employees, had access to the area surrounding the compressor.

Viewing the facts in the light most favorable to FHR, the Court finds there are genuine issues of material fact on the issue of whether Lovegreen had exclusive control over the compressor. Specifically, the parties have set forth conflicting evidence regarding when Lovegreen personnel were present and working on the compressor, and

whether other individuals had access to the compressor during that timeframe.  Summary judgment is also inappropriate on this basis and the Court will therefore deny Lovegreen's motion for summary judgment on FHR's negligence claim.

### B.      Breach of Contract

Under Minnesota law, a breach of contract claim consists of four elements:  (1) a valid contract; (2) performance by the plaintiff of any conditions precedent; (3) a material breach of the contract by the defendant; and (4) damages.  *Parkhill v. Minn. Mut. Life Ins. Co.*, 174  F. Supp. 2d 951, 961 (D. Minn. 2000) (citing *Briggs Trans. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1970)).  FHR alleges that under the Agreement, Lovegreen agreed to perform work on the compressor in a "workmanlike manner," and that by leaving a rag in the compressor, Lovegreen did not perform its tasks in a workmanlike manner, and breached the Agreement.

Lovegreen argues that FHR's breach of contract claim fails as a matter of law, because the Agreement did not contain a specific requirement that Lovegreen remove foreign matter from the compressor.  Although the Agreement did not impose a specific duty to search for and remove foreign matter from the compressor, it is undisputed that, under the terms of the Agreement, Lovegreen agreed to perform work on the compressor in a "workmanlike" manner.  As set forth above with respect to FHR's negligence claim, there are genuine issues of material fact as to whether Lovegreen breached its duty to perform the work in a workmanlike manner.  These genuine issues of material fact on

FHR's negligence claim also preclude summary judgment on FHR's breach of contract claim.  Accordingly, the Court denies Lovegreen's motion on this claim.

## C.    Spoliation

Lovegreen also argues that FHR's claims against it should be dismissed as a sanction for FHR's spoliation of evidence.  Lovegreen contends that FHR committed spoliation of evidence by inspecting and repairing the compressor without first calling Lovegreen and giving Lovegreen the opportunity to inspect the compressor.

To set forth a claim of spoliation, the moving party must show that the adverse party destroyed potential evidence, that the evidence was discoverable, and that the loss of evidence prejudiced the moving party.  *See Duy Ngo v. Storlie*, 2006 WL 1046933, at *3 (D. Minn. Apr. 19, 2006) (citing *Stevenson v. Union Pac. RR Co.*, 354 F.3d 739, 745 (8th Cir. 2004)); *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 954 (D. Minn. 1999); *see also Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993).  Where potential evidence is destroyed prior to the commencement of litigation, the moving party must also show that the destruction was intentional and in bad faith.  *Stevenson*, 354 F.3d at 746; *E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005). Evidence that a party destroyed evidence in the course of mitigating damages is relevant to whether the destruction was intentional and in bad faith.  *See Martins v. Interstate Power Company*, 2002 WL 534890, at *5 (Iowa Ct. App. Apr. 10, 2002); *McLaughlin v. Denharco, Inc.*, 129 F. Supp. 2d 32 (D. Me. 2001).

FHR responds that it commenced inspection and repair of the compressor immediately in order to mitigate damages. Although Lovegreen argues that FHR could have simply called Lovegreen and permitted it to inspect the compressor itself, FHR has offered evidence showing that it was accruing business interruption damages of roughly $1 million per day while the compressor was out of operation, and therefore delaying repairs even a few hours would have resulted in tens of thousands of dollars in additional business interruption damages. Further, FHR documented the inspection and repair with photographs and notes, and saved all rag fragments. Notably, FHR did not destroy or discard any damaged property; it simply removed the rag fragments and reassembled the compressor. *See Minn-Chem, Inc. v. Richway Industries, Ltd.*, 2000 WL 1066529, at *2 (Minn. Ct. App. Aug. 1, 2000) ("unlike other cases in which spoliation has been found, BCA identified, removed, and carefully preserved all evidence").

Based on all the circumstances here, the Court finds that FHR's immediate inspection and repair of the compressor was not an intentional act of destruction of evidence, but was rather part of its effort to mitigate damages, and that FHR took all reasonable steps to preserve evidence. Therefore, the Court denies Lovegreen's motion for summary judgment on this ground.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Lovegreen's motion for summary judgment [Docket No. 43] is **DENIED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge Order dated April 11, 2006 [Docket No. 88] is **AFFIRMED.**


DATED: August 25, 2006
at Minneapolis, Minnesota.

                        s/John R. Tunheim
                        JOHN R. TUNHEIM
                United States District Judge