## gUNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FLINT HILLS RESOURCES LP,                    Civil No. 04-4699 (JRT/FLN)

Plaintiff,

v.

LOVEGREEN TURBINE SERVICES, INC.,
                                             **MEMORANDUM OPINION
Defendant/Third-Party Plaintiff.                AND ORDER**

v.

HYDROCHEM INDUSTRIAL SERVICES,

Third-Party Defendant.

Charles F. Webber, Rikke A. Dierssen-Morice, and Michael M. Krauss, **FAEGRE & BENSON LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402; Travis A. Pearson, **FLINT HILLS RESOURCES LP**, 4111 East 37th Street North, Wichita, KS 67220, for plaintiff Flint Hills Resources LP.

Curtis D. Smith, **MOSS & BARNETT, P.A.**, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402; J. Vincent Stevens, **GOETZ & ECKLAND P.A.**, 43 Main Street Southeast, Suite 400, Minneapolis, MN 55414, for defendant and third-party plaintiff Lovegreen Turbine Services, Inc.

David M. Dahlmeier and Amy M. Hoeft, **FOLEY & MANSFIELD, PLLP**, 250 Marquette Avenue, Suite 1200, Minneapolis, MN 55401; Dean A. LeDoux, **GRAY PLANT MOOTY & BENNETT, PA**, 80 South Eighth Street, Suite 500, Minneapolis, MN 55402, for third-party defendant Hydrochem Industrial Services.

Following losses arising from the shutdown of an oil compressor, plaintiff Flint Hills Resources, LP ("FHR"), filed this action for breach of contract and negligence against defendant Lovegreen Turbine Services, Inc. ("Lovegreen"). Lovegreen then

brought a claim for contribution against third-party defendant Hydrochem Industrial Services ("Hydrochem").  This Court granted Hydrochem's motion for judgment as a matter of law, and – following seven days of trial – a jury returned a verdict in favor of FHR on both its contract claim and its negligence claim, and awarded FHR damages in the amount of $1,233,790.  This case is now before the Court on Lovegreen's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial; FHR's Motion to Amend Judgment to Add Prejudgment Interest and Expenses and Attorneys' Fees; and Hydrochem's Motion for Entry of Judgment and for Costs.  For the reasons set forth below, the Court denies Lovegreen's motion, grants FHR's motion in part, and grants Hydrochem's motion in part.

## BACKGROUND

FHR is a refining and chemicals company that owns and operates a crude oil refinery near Rosemount, Minnesota.  On August 13, 2003, FHR and Lovegreen entered into a Field Services Agreement (the "Agreement").  Under the Agreement, Lovegreen agreed to perform an overhaul on an oil compressor.  The overhaul required Lovegreen to dismantle, inspect, service and rebuild the compressor.

Lovegreen personnel began the overhaul on September 8, 2003, working on the compressor around the clock in two 12-hour shifts.  In connection with their work on the compressor, Lovegreen personnel brought a 50-pound container of cloth rags to the job site, which they used to wipe the compressor during the overhaul.  Another contractor, Hydrochem, hydroblasted the deck near the compressor while Lovegreen was working on

the overhaul.  On September 24, 2003, the overhaul was complete, and Lovegreen sent an employee to pick up Lovegreen's tools and materials, including the remaining cloth rags.

On October 2, 2003, FHR reactivated the compressor, and the compressor initially seemed to be running normally.  One week later, on October 9, a portion of the refinery experienced a charge pump failure, causing the compressor to shut down.  FHR re-started the compressor that same day, and noticed that it was making a lot of noise and seemed to be excessively vibrating.  FHR shut down the compressor.

FHR then inspected the compressor to see what the problem was, and determined that a cloth rag was stuck inside.  FHR alleges that the cloth rag was one of Lovegreen's, and that Lovegreen personnel had left it in the compressor after they finished the overhaul.  FHR employees began working on the compressor to remove the cloth fragments and return the compressor to operation.  The compressor was returned to service on October 14, 2003, after having been idled for five days.  FHR claims that the compressor failure and subsequent shutdown for repair caused damages in excess of $6.5 million.  This lawsuit followed.

FHR brought claims against Lovegreen for negligence and breach of contract, arguing that Lovegreen breached its duty to proceed in a "workmanlike manner" by leaving a rag in the compressor and failing to rid the compressor of any foreign materials at the end of the overhaul.  Lovegreen then brought a third-party claim against Hydrochem, arguing that the rag responsible for the shutdown must have been hydroblasted by Hydrochem into an obscure location.  This Court denied Lovegreen's motion for summary judgment, finding sufficient evidence for a reasonable juror to

conclude that Lovegreen breached its duties to FHR.  A seven-day jury trial followed.  The details of that trial are repeated below where they are necessary to resolve the parties' motions.

Before the parties completed the presentation of evidence, this Court granted Hydrochem's motion for judgment as a matter of law.  However, the Court denied Lovegreen's motion for judgment as a matter of law, on grounds substantially similar to those relied on in denying Lovegreen's motion for summary judgment.  The jury then found that Lovegreen both breached its contract and acted negligently in its overhaul of the compressor, and awarded FHR $1,233,790 in damages.  Lovegreen now challenges this verdict on multiple grounds set forth below.  In addition, both FHR and Hydrochem bring motions for various fees and costs.

## ANALYSIS

## I.     LOVEGREEN'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

### A.     Motion for Judgment as a Matter of Law

Under Rule 50 of the Federal Rules of Civil Procedure, judgment as a matter of law is appropriate if no reasonable juror could have returned a verdict for the nonmoving party.  *Weber v. Strippit, Inc.*, 186 F.3d 907, 912 (8th Cir. 1999).  In analyzing a Rule 50 motion, the Court must consider the evidence in the light most favorable to the nonmovant, resolve all factual conflicts in the nonmovant's favor, and give the nonmovant the benefit of all reasonable inferences.  *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1002 (8th Cir. 2000).  "Judgment as a matter of law is appropriate when the record

contains no proof beyond speculation to support the verdict." *Heating & Air Specialists v. Jones*, 180 F.3d 923, 932 (8th Cir. 2000).

Lovegreen claims it is entitled to judgment as a matter of law on three grounds: (1) FHR failed to prove that Lovegreen breached the Agreement; (2) FHR failed to prove that Lovegreen was negligent; and (3) FHR failed to prove that Lovegreen's breach of contract and/or negligence was a direct cause of FHR's damages.

### 1.      Breach of Contract

Under Minnesota law, a breach of contract claim consists of four elements: (1) a valid contract; (2) performance by the plaintiff of any conditions precedent; (3) a material breach of the contract by the defendant; and (4) damages. *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (citing *Briggs Trans. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1970)).  Under the Agreement between FHR and Lovegreen, Lovegreen was required to perform its work "[i]n a workmanlike manner using qualified, efficient and careful workers, in accordance with the standards of care customary in the industry for similar work."  FHR argued that Lovegreen breached this Agreement by leaving a rag in the compressor and/or by failing to inspect the compressor for foreign materials.[1]  The jury agreed.

Lovegreen now argues that FHR based its breach claim on the mere fact that a rag was found in the compressor, and failed to introduce evidence of "the who, what[,] where

---

[1] Lovegreen does not dispute that the Agreement was a valid contract and does not argue that there was a failure to perform any conditions precedent.  The question of whether any breach by Lovegreen caused damages is addressed below.

and when" for how this occurred.  Lovegreen relies primarily on *Biggerstaff v. Nance*, 769 S.W.2d 470 (Mo. Ct. App. 1989), in arguing that FHR's evidence was insufficient. There, the Missouri Court of Appeals upheld a verdict finding no negligence or breach of contract arising out of the collapse of a retaining wall, noting that "[t]he mere showing that the wall fell down did not, of and by itself, furnish proof that it was not constructed in a workmanlike manner."  769 S.W.2d at 473.  Here, however, there was sufficient evidence to distinguish *Biggerstaff* and support the breach of contract finding returned by the jury.

The *Biggerstaff* plaintiff argued that the wall had fallen because the defendant had failed to put in steel reinforcing rods, just as FHR directs blame toward Lovegreen's rag. In *Biggerstaff*, however, the court noted that there was "no way of knowing" whether the contractor had failed to put the rods into the damaged wall.  769 S.W.2d at 473.  Indeed there was substantial reason to doubt plaintiff's theory, with the court adding that "there *was* evidence that [defendant] had put such rods in portions of the footings that the wall did not cover," and describing a plausible competing theory for the collapse that involved bulldozing work performed by plaintiff's son.  *Id.* at 472-73.  In short, the cause of the disputed damages was a mystery.  The *Biggerstaff* court also noted that even if defendant had failed to put in the rods, the question of whether this reflected inadequate workmanship was best addressed by expert testimony, which had not been introduced. *Id.* at 473.

Here, on the other hand, the parties appear to agree on several important elements of what caused the damages: a rag was left in the compressor and it caused the

compressor to break down.   In addition, there was expert testimony from Dr. Scott Harding that either leaving a rag in the compressor or failing to perform an adequate inspection would have breached Lovegreen's duties.   Thus, unlike in *Biggerstaff*, the jury's inquiry was focused on two relatively discrete questions of fact:   (1) did Lovegreen personnel cause the rag to enter the compressor? and (2) did Lovegreen fail to perform an adequate inspection?   There was sufficient evidence for the jury to answer "yes" to either question.

As to causing the rag to enter the compressor, FHR introduced evidence from which a jury could reasonably conclude the following: Lovegreen brought approximately fifty pounds of rags to the work site; Lovegreen frequently used those rags to wipe down the compressor; Lovegreen did the great majority of the work on the compressor; and the rag that caused the breakdown was one of the rags brought to the work site by Lovegreen. Taken in the light most favorable to FHR, this circumstantial evidence was sufficient for a reasonable juror to conclude that Lovegreen breached its contract by causing the rag to enter the compressor.   *See Flint Hills Res. LP v. Lovegreen Turbine Servs., Inc.*, No. 04-4699, 2006 WL 2472819, at *3 (D. Minn. Aug. 25, 2006) (relying on substantially the same grounds in denying Lovegreen's motion for summary judgment).

As to Lovegreen's inspection duties, FHR (1) introduced testimony from witnesses to the overhaul who did not recall an inspection satisfying industry standards, and (2) emphasized the lack of any indications in a contemporaneous job log confirming that such an inspection was completed.   Moreover, while Lovegreen is correct that the discovery of a rag is not – on its own – conclusive as to the cause of the breakdown, the

Court fails to see why it cannot be treated as supporting, circumstantial evidence of the lack of an *inspection*. *Cf. Biggerstaff*, 769 S.W.2d at 473 (finding the mere fact of damages insufficient where the relevant duty required the *installation* of steel beams, without mention of any duty to inspect for such installation at a later time). Taken in the light most favorable to the verdict, this evidence was sufficient for a reasonable juror to conclude that Lovegreen breached its contract by failing to perform an adequate inspection for foreign materials. Accordingly, Lovegreen's motion for judgment as a matter of law is denied as to the question of whether Lovegreen failed to perform its contractual duties.

### 2.     Negligence

Lovegreen also argues that it is entitled to judgment as a matter of law on the question of whether it was negligent. In support, Lovegreen relies on the same arguments it presented against the breach of contract finding, and does not suggest any distinction between these claims. Indeed, Lovegreen's responsibilities under Minnesota's common law appear to mirror its responsibilities under the Agreement. *See Arden Hills N. Homes Ass'n v. Pemtom, Inc.*, 475 N.W.2d 495, 500 (Minn. Ct. App. 1991) ("Minnesota law holds that a contractor has a duty, independent of the contract itself, to erect a building in a reasonably good *and workmanlike* manner.") (emphasis added). Accordingly, the Court denies this portion of Lovegreen's motion as well, for the reasons given above.

### 3.      Causation

Lovegreen next argues that it is entitled to judgment as a matter of law because there was insufficient proof that either its breach of contract or its negligence was a direct cause of FHR's damages.   Lovegreen argues that the testimony of its expert, Frank Kushner, demonstrated that the most likely scenario for how the rag became lodged in the compressor was that Hydrochem hydroblasted it into a location where it would not have been detected during a visual inspection.   Lovegreen argues that because this theory was at least as likely as the theories proposed by FHR, FHR failed to meet its burden of proof. *See Rochester Wood Specialties, Inc. v. Rions*, 176 N.W.2d 548, 552 (Minn. 1970) (noting that "the inference of negligent causation must outweigh contrary inferences") (quotation omitted).

The Court disagrees that there was insufficient evidence to distinguish these theories.   Kushner's theory was not impossible.   However, as discussed more fully below in this Court's analysis of Lovegreen's third-party claim against Hydrochem, it was not supported by sufficient evidence to persuade a reasonable juror.   In short, Kushner's theory was based on mere theoretical possibilities and a single piece of testimony about an employee holding a rag, and did not establish any duty to inspect that was similar to the duty owed by Lovegreen.   FHR's theory, on the other hand, was supported by the evidence outlined above.   That evidence was sufficient for a reasonable juror to conclude that Lovegreen caused the rag to enter the compressor and failed to adequately inspect the compressor for foreign materials.   Accordingly, Lovegreen's motion for judgment as a matter of law is denied as to the question of causation as well.

**B.     Motion for a New Trial**

Under Rule 59(a) of the Federal Rules of Civil Procedure, the Court may grant a motion for a new trial to all or any of the parties on all issues or on particular issues.  Fed R. Civ. P. 59(a).  In order to grant a motion for a new trial under Rule 59(a), this Court "must believe . . . that the verdict was so contrary to the evidence as to amount to a miscarriage of justice."  *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996).  Even where the court has made evidentiary errors, a new trial is only warranted "when the cumulative effect of the errors is to substantially influence the jury's verdict."  *Williams v. Kansas City, Mo.*, 223 F.3d 749, 755 (8th Cir. 2000).

Lovegreen argues that it is entitled to a new trial on five grounds: (1) there is insufficient evidence to support the verdict; (2) the Court declined to adopt a jury instruction submitted by Lovegreen describing a contractor's duty to follow specifications; (3) the Court allowed plaintiff to present its damages as "net" damages and disclosed to the jury that plaintiff had previously been paid $4,906,939 from "other sources;" (4) the Court erred in allowing testimony from FHR's expert Dr. Scott Harding; and (5) the Court erred in admitting testimony by Hydrochem's expert Thomas Kocurek.  Lovegreen also argues that it is entitled to a new trial on its third-party contribution claim against Hydrochem.

**1.     Insufficient Evidence**

Lovegreen first argues that the verdict was not supported by the evidence, relying on the same arguments it offered in support of its motion for judgment as a matter of law.

For the reasons given above, the Court concludes that the jury's verdict was supported by sufficient evidence, and did not amount to a miscarriage of justice.

### 2. Jury Instructions

Lovegreen next argues that the Court erred in failing to give one of its proposed jury instructions. The instruction at issue was titled "Contractor's Duty to Follow Specifications," and stated "[a] contracting party is not liable for defects in the plan or specifications provided by the owner so long as it follows the plan or specifications."[2] Lovegreen argues that this instruction was important because the Agreement did not specifically require an inspection for foreign materials.

"[J]ury instructions are reviewed as a whole to insure that they fairly and adequately state the substantive law on the issue raised." *McKay v. WilTel Commc'n Sys., Inc.*, 87 F.3d 970, 976 (8th Cir. 1996). Even if jury instructions include error, however, "a new trial is necessary only when the errors misled the jury or had a probable effect on the jury's verdict." *Slidell, Inc. v. Millenium Inorganic Chems., Inc.*, 460 F.3d 1047, 1054 (8th Cir. 2006).

---

[2] The full text of Lovegreen's proposed instruction is as follows:

> Where a party to a contract agrees to perform a given undertaking according to plans or specifications provided by the owner, that party fulfills its contractual obligation by doing the prescribed work in the prescribed manner, and it is not responsible for defects in the result unless due to some fault on its part.

> A contracting party is not liable for defects in the plan or specifications provided by the owner so long as its [sic] follows the plan or specifications. The owner impliedly warrants that the plan or specification is fit for use in performing the work.

(Defendant Lovegreen Turbine Services Inc.'s Proposed Jury Instructions, at 21.)

Here, the Court concludes that the instructions given to the jury, when viewed as a whole, adequately stated the applicable principles of contract law.  The Court included Minnesota's model instruction on breach of contract, as well as three supplemental instructions submitted by Lovegreen.  (Court's Jury Instructions, at Instructions 15-18.) These additional instructions provided the jury with especially thorough guidance in its interpretation of the relevant contract.  Moreover, there is some danger that the disputed instruction would have misled the jury.  It is undisputed that a foreign material inspection was not specifically mentioned in the Agreement.  Instead, the parties' dispute centered on whether the more general guidance included in the contract – calling for, for example, a "workmanlike manner using qualified, efficient and careful workers, in accordance with the standards of care customary in the industry for similar work" – would have been read to *implicitly* include such a duty.  There is nothing about the parties' agreement or the law of contracts that would have prohibited such a reading.  Lovegreen's proposed instruction may have created improper confusion on this point, by implying that any obligations – including those encompassed by the general industry standard of care – had to be expressly included in the contract in order to have effect.

Finally, and perhaps most importantly, Lovegreen was free to argue to the jury that it was not contractually bound to perform a more thorough foreign material inspection, and Lovegreen repeatedly presented such arguments with emphasis.  *Cf. United States v. Tulk*, 171 F.3d 596, 601 (8th Cir. 1999) (finding no abuse of discretion where there were general instructions covering the relevant subject matter and objecting party had the opportunity to argue the issue it wanted addressed in a separate instruction).

In those circumstances, the Court finds no error in its decision not to include a further instruction on the law of contracts. Accordingly, Lovegreen's motion for a new trial is denied as to its challenge to the jury instructions.

### 3.    Damages

Following the breakdown of the compressor, FHR received insurance payments totaling $4,906,939. Because FHR alleged that its total losses amounted to $6,680,598, it sought damages from Lovegreen in the amount of $1,773,659. The Court permitted FHR to ask the jury to award $1,773,659, rather than requiring it to seek an award of $6,680,598 and discounting any award following the verdict. Where it became necessary to reference the $4.9 million payment in the parties' discussion of damages, the parties referred to it as a payment from "other sources." Moreover, the Court instructed the jury that it should draw no inferences concerning liability from this evidence and should not speculate as to its source. Finally, following a question during deliberations, the Court instructed the jury that "[i]f you find that Flint Hills was fully compensated for its total losses by the $4.9 million it has already received, then your damage award should be $0." (Docket No. 257.)

Lovegreen now argues that the Court erred in permitting this approach to presenting damages. Lovegreen argues that the "sole purpose" of this approach was "to imply that some other party had determined FHR's claim was valid and that its damages were at least $4,906,939." Lovegreen contends that this violated Rule 408(a) of the

Federal Rules of Evidence, as well as a Minnesota state rule governing comparative fault claims. *See* Minn. Stat. § 604.01.

Rule 408 prohibits evidence of a party "accepting . . . a valuable consideration in compromising . . . [a] claim" when such evidence is "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Fed. R. Evid. 408(a). A "primary reason" for this exclusion "is to encourage non-litigious solutions to disputes." *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976). Here, the evidence of the $4.9 million payment presented to the jury did not reference settlement negotiations of any kind and was not expressly tied to the compromising of any claim. To the extent that the jury may have speculated about these possibilities, the Court explicitly instructed it not to speculate as to the payment's source or to draw inferences regarding liability. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Finally, to the extent that the jury may have drawn inferences about the amount of FHR's losses from this payment, the jury was instructed that if it was not persuaded that FHR's losses exceeded $4.9 million, it should award no damages.[3] In short, the evidence of "other source" payments was carefully presented to avoid the prohibited purposes articulated in Rule 408, and to ensure that FHR was not given any inappropriate advantage in proving either Lovegreen's liability or the amount of its damages. The Court concludes that Rule 408 was not implicated, and that even if it

---

[3] Moreover, the Court agrees with FHR that even if the jury did improperly consider this evidence, its impact would have been unclear. Lovegreen speculates that the jury would have made certain inferences suggesting FHR had a valid claim of *at least* $4.9 million. However, the jury may also have concluded that it had been determined that FHR's damages were *no more* than $4.9 million.

had been, any error was sufficiently addressed by the Court's curative instructions to prevent the need for a new trial. *Cf. Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984) (finding that Rule 408 was not violated where evidence of settlement with co-defendants was admitted to prevent confusion and court instructed jury not to consider it in reaching its verdict).

Section 604.01 of Minnesota Statutes, Minnesota's comparative fault provision, sets forth a procedure by which Minnesota courts handle releases and partial settlements in jury trials seeking damages. Lovegreen argues that under this procedure, FHR was required to ask the jury to award the full $6.7 million that it argues it suffered in losses, and the Court was to then reduce any damage award by $4.9 million. FHR responds, however, that even if this procedure had been required for its negligence claims, Minnesota's comparative fault statute is inapplicable to claims sounding in contract. Thus, FHR argues, any error in how its negligence claims were submitted is harmless, because the jury also found that Lovegreen breached its contract and there was no meaningful distinction between the merits of these two claims. Lovegreen does not reply to this argument. This Court agrees that Minnesota's comparative fault statute did not apply to FHR's contract claim. *See Leamington Co. v. Nonprofits' Ins. Ass'n*, 661 N.W.2d 674, 677 (Minn. Ct. App. 2003). Thus, there was no error in the Court's handling of FHR's request for contract damages, rendering any error in the handling of FHR's negligence claim harmless. Moreover, while the Court could have presented the request for negligence damages separately – in order to conform the negligence claims to the Minnesota comparative fault statute – this may have risked introducing confusion for

the jury, particularly where the theories of liability under the two claims were identical. Finally, for the reasons outlined above, the Court presumes that the jury followed its repeated explicit instructions not to improperly consider the $4.9 million payment in arriving at its damages figure.  This ensured that the purposes behind Minnesota's comparative fault procedure were honored as well.  Accordingly, Lovegreen's motion for a new trial based on FHR's request for "net damages" is denied.

### 4.    Dr. Scott Harding

Lovegreen argues that the Court erred in admitting the expert testimony of Dr. Scott Harding, who testified as to the standard of care that applied to Lovegreen's work on the compressor.  Lovegreen first argues that Harding should not have been permitted to testify in FHR's case-in-chief because he was originally designated as a rebuttal expert.  The Court previously rejected this as a basis for excluding Dr. Harding's testimony, and does so here as well.  *See Callahan v. A.E.V., Inc.*, 182 F.3d 237, 259 (3d Cir. 1999) ("The Federal Rules of Civil Procedure, and Rule 26(a)(2) governing the disclosure and discovery of expert witnesses in particular, make no distinction between the permissible uses of 'regular' experts and 'rebuttal' experts.").

Lovegreen next argues that Dr. Harding had inadequate experience to identify the standard of care applicable to Lovegreen.  The Court rejected this argument in denying Lovegreen's motion in limine to exclude Dr. Harding's testimony, and the Court finds no basis for reversing that conclusion.  Dr. Harding is an engineer with significant experience analyzing the failure of mechanical systems used by oil refineries.  (*See*

Docket No. 229, Ex. 2, at 17.)   While this experience did not involve the specific compressor operated by FHR, Lovegreen was free to highlight this fact in its cross-examination and argument.  As to the factual basis for Dr. Harding's specific conclusions about the standard of care and Lovegreen's actions, Lovegreen was free to challenge these matters in cross-examination as well.  *See Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.").   Accordingly, Lovegreen's motion for a new trial based on the admission of Dr. Harding's testimony is denied.

### 5.      Thomas Kocurek

Lovegreen next argues that the Court erred in admitting the testimony and expert opinion of Thomas Kocurek, who also testified as to the standard of care applicable to Lovegreen.  Lovegreen summarily contends that Kocurek's testimony lacked sufficient foundation.  However, Lovegreen does not provide the Court with any factual or legal basis for this argument.   As with Dr. Harding, the Court finds that Kocurek was sufficiently qualified to provide expert testimony, and that any concerns about the factual basis for Kocurek's conclusions were properly left to cross-examination.  Accordingly, Lovegreen's motion for a new trial based on Kocurek's testimony is denied.

### 6.    Contribution

Finally, Lovegreen argues that the Court erred in concluding that there was insufficient evidence to support its third-party claim against Hydrochem.  Lovegreen argues that the basis for its claim against Hydrochem was as strong as the basis for the claim brought by FHR, and that the claims should have either both been dismissed or both been submitted to the jury.

The Court disagrees.  As the Court explained at trial and in its discussion of causation given above, there was a sufficient basis to distinguish the theories against Lovegreen and Hydrochem.  There was sufficient evidence for a jury to conclude that Lovegreen had a duty to inspect for foreign materials before closing up the compressor, and that it failed to adequately do so.  There was not similar evidence implicating Hydrochem.  Moreover, the theory that Hydrochem hydroblasted the rag into an obscure location was supported by little more than speculation.  Lovegreen points to a single occasion when a hydroblaster was observed holding a rag, and to testimony that its hydroblasting theory was theoretically possible.  This evidence is insufficient to demonstrate that the offending rag was hydroblasted into an obscure location.  *See Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 575 (8th Cir. 2007) (noting that speculation is insufficient to support a verdict).  In short, the Court is not persuaded that there was equivalent evidence of both claims or that there was sufficient evidence for Lovegreen's contribution claim against Hydrochem to go to the jury.  Accordingly, Lovegreen's motion for a new trial based on the dismissal of its third-party claim against Hydrochem is denied.

### III.    FHR'S MOTION TO AMEND THE JUDGMENT

FHR moves for the Court to amend the judgment to add prejudgment interest in the amount of $209,778.10 and an award of costs, expenses, and attorneys' fees totaling $903,297.92.  The Court grants this motion in part for the reasons given below.

### A.    Prejudgment Interest

FHR contends that it is entitled to prejudgment interest under Minn. Stat. § 549.09(b).  Lovegreen agrees, but the parties dispute the date when this calculation should begin.  "In a diversity case, the question of prejudgment interest is controlled by state law."  *Trinity Prods., Inc. v. Burgess Steel, L.L.C.*, 486 F.3d 325, 335 (8th Cir. 2007).  In Minnesota:

> Except as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest on pecuniary damages shall be computed . . . from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first[.]

Minn. Stat. § 549.09(b).  FHR offers three possible start dates for the calculation of prejudgment interest[4]: (1) November 17, 2003, when FHR sent Lovegreen an incident analysis describing the shutdown; (2) February 20, 2004, when FHR sent Lovegreen an expert damage report detailing its losses from the shutdown; and (3) November 2, 2004, when FHR filed this lawsuit.

---

[4] FHR also mentions a fourth – the date when the shutdown occurred – but concedes that using this date would be inappropriate under Minnesota law.

1.      **November 17, 2003**

FHR argues that November 17, 2003, is the appropriate date to start the calculation because its "incident analysis" gave Lovegreen notice of its claim.  FHR notes that this analysis indicated Lovegreen was responsible for the "root cause" of the shutdown.  Lovegreen disagrees that this analysis provided notice of an intent to file a legal claim, noting that it also stated "we are forwarding you the summary of our incident analysis to use for improving your own systems, to further reduce risk."  (Lovegreen Trial Ex. 18.)

The Court agrees that the transmission of this analysis was not sufficient to begin the prejudgment interest clock.  Minnesota courts have frequently described the required notice under Minn. Stat. § 549.09 as a demand for payment.  *See Trapp v. Haunch*, 587 N.W.2d 61, 63 (Minn. Ct. App. 1998) ("Under the statute, prejudgment interest does not begin to run until an action is brought or when a written *demand* is made, whichever is first.") (emphasis added); *Metalmasters of Minneapolis, Inc. v. Liberty Mut. Ins. Co.*, 461 N.W.2d 496, 502 (Minn. Ct. App. 1990) ("The statute allows preverdict interest from the commencement of the action when no written settlement *demand* precedes the commencement.") (emphasis added); *Higgins ex rel. Higgins v. J.C. Penney Cas. Ins. Co.*, 413 N.W.2d 189, 191-92 (Minn. Ct. App. 1987) (noting that in the relevant letter, the plaintiff had "*demanded* payment") (emphasis added).  This is consistent with the purpose of the prejudgment statute, which is "to give potential judgment debtors a greater incentive to settle or expedite cases."  *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 391

(Minn. Ct. App. 2004).  That purpose is not implicated until it is reasonably clear that an injured party will be seeking relief.

Here, the November 17 letter does not "demand" anything.  Instead, the letter indicates that it was sent per Lovegreen's request, for the purpose of helping Lovegreen improve its performance.  The letter also specifically contemplates future business relations with Lovegreen, and notes that those relations would be "contingent" upon Lovegreen improving its foreign matter exclusion practices.  In that context, the letter – which was drafted by an individual who was not identified as an attorney – appears much more like a notice that Lovegreen had put a business relationship at risk than notice of a legal claim.  *Cf. Indep. Sch. Dist. 441 v. Bunn-O-Matic Corp.*, No. 96-594, 1996 WL 689768, at *10 (D. Minn. Dec. 3, 1996) (finding notice of a claim where the claimant had promised a "formal demand" against the defendant).  Accordingly, the Court finds that the November 17, 2003 letter did not provide Lovegreen with notice of FHR's claims.

### 2.      February 20, 2004

The next date that FHR suggests is February 20, 2004, which corresponds with when it sent a comprehensive assessment of its damages to Lovegreen's insurer. Lovegreen's only objection to using this date is that there is no evidence in the record that this notice was ever delivered to Lovegreen itself.  FHR replies that at the time of the delivery, these insurers were operating in a fiduciary capacity on Lovegreen's behalf, and that notice to them should thus be imputed to Lovegreen.

The Court agrees that this damage assessment was sufficient to provide Lovegreen with notice of FHR's claim.  While the record would have been clearer on this point had FHR provided formal notice to Lovegreen as well as its insurer, Lovegreen does not deny that it had authorized this insurer to handle the specific claims at issue.   In those circumstances, Lovegreen's insurer had a duty to settle the disputed claims in good faith. *See St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 407 (Minn. Ct. App. 2007).  Notice to such a party falls clearly within the purpose of the prejudgment interest statute, which is "to give potential judgment debtors a greater incentive to settle or expedite cases." *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 391 (Minn. Ct. App. 2004).   Accordingly, FHR is entitled to prejudgment interest in the amount of $197,203.59.[5]

**B.** **Attorney's Fees and Costs**

**1.** **Fees and Costs Under the Parties' Contract**

FHR argues that its contract with Lovegreen entitles it to all attorney's fees and expenses that it incurred in the course of this litigation.   FHR requests a total of $903,297.92.  The contractual provision at issue states:

> To the fullest extent permitted by law, [Lovegreen] shall defend, protect, indemnify and save [FHR] harmless from and against all Claims/Liability arising out of or incident to any of the work performed by [Lovegreen], on account of . . . damage to property . . . regardless of whether such harm is to [Lovegreen], [FHR], or any other person or entity, and regardless of how such harm is caused[.]

---

[5] Lovegreen does not dispute that this is the correct figure if the Court uses February 20, 2004 as the notice date.

(Lovegreen Trial Ex. 5.)   The contract further defines "Claims/Liability" as "claims, liability, damages, demands, lawsuits, causes of action . . . expenses (including, but not limited to, attorney's fees) and costs of every kind and character."  (Id.)

Lovegreen argues that this provision applies only to third-party claims asserted against FHR, and is irrelevant to claims between FHR and Lovegreen.   For support, Lovegreen relies on *FleetBoston Robertson Stephens, Inc. v. Innovex, Inc.*, 172 F. Supp. 2d 1190 (D. Minn. 2001), which dealt with similar contract language in a dispute between the two parties to the contract.   Based on a provision in the relevant contract, however, the *FleetBoston* court was bound to apply New York law, which requires that an intent to provide for the indemnification of attorney's fees between contracting parties be "unmistakably clear."   *Id.* at 1199.   The court found that the provision at issue failed to meet that heightened standard.

Here, however, the parties do not dispute that their contract is governed by Minnesota law.   As FHR points out, Minnesota law treats an indemnity agreement as "a contract, which is to be construed according to the principles generally applied in the construction or interpretation of other contracts."   *Buchwald v. Univ. of Minn.*, 573 N.W.2d 723, 726 (Minn. Ct. App. 1998).   "Unambiguous contract language must be construed according to its plain and ordinary meaning."   *Id.*  In light of those principles, this Court agrees that FHR is entitled to attorney's fees, costs, and expenses.   The contract provision at issue clearly provides for indemnity for "all" claims arising out of work performed by Lovegreen that involved harm to FHR.   The jury clearly concluded

that this case involves such a claim.  Accordingly, the Court finds that the parties'
contract entitles FHR to attorney's fees, costs and expenses.

### 2.    Reasonableness of Attorney's Fees

In the alternative, Lovegreen (1) generally asserts that FHR's attorney's fees – in
the amount of $755,155.75 – were "excessive" and (2) notes that FHR has failed to
provide the Court with the hourly rates charged by its attorneys, which is necessary for
the Court to assess the reasonableness of FHR's request.  *See Kennedy Bldg. Assocs. v.
Viacom, Inc.*, 375 F.3d 731, 748 (8th Cir. 2004).

The Court does not agree that either of these arguments presents a reason to reduce
FHR's recovery.  As to the first argument, FHR has supplied a detailed accounting of all
of the tasks that its attorneys performed in preparing for the case.  Despite the availability
of this thorough accounting, Lovegreen does not identify any specific entries as
unreasonable.  Rather, Lovegreen broadly contests FHR's total request, noting that it
equals 61% of the jury's damage award.  As FHR points out, however, there is no general
requirement that attorney's fees bear a specific relationship to a jury's damage award.
*See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986).  Thus, the Court will not
reduce FHR's award merely because of its sheer size.

However, the Court would have considered a challenge based on either the
reasonableness of the number of hours that FHR billed or the reasonableness of its hourly
billing rates.  *See Kennedy Bldg. Assocs.*, 375 F.3d at 748 ("The starting point for
determining the fee award is the number of hours reasonably expended on the case

multiplied by a reasonably hourly rate.").   While FHR did not initially provide an accessible summary of this information – which was necessary for Lovegreen to mount such a challenge – FHR supplied this information with its reply brief.  (Second Decl. of Charles F. Webber, Ex. 1.)  FHR added that it would have no objection to Lovegreen filing an additional reply in response to this information.  Lovegreen did not request to do so.

FHR indicated that it billed a total of 2381.45 hours.  With a total fee request of $755,155.75, this results in a blended hourly rate of approximately $317.10 per hour. (Second Decl. of Charles F. Webber, Ex. 1.)  Based on this Court's experience with local billing rates, the success of FHR on all of its claims, and the absence of any specific objections from Lovegreen, the Court concludes that these figures were reasonable, and that FHR is entitled to recover its full attorney's fees from Lovegreen.

### 3.    Costs and Expert Fees

Lovegreen next argues that FHR has requested costs and expert fees that are not recoverable under 28 U.S.C. §§ 1920 and 1821, respectively.   As FHR points out, however, it has not sought costs pursuant to either of these statutes.  Rather, it has sought recovery pursuant to the Agreement quoted above, which entitles them to "expenses . . . and costs of every kind and character."  The limitations of § 1920 and § 1821 do not apply where broader recovery is authorized by contract.  *See*, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439, 445 (1987).  Lovegreen makes no argument about any

expenses or costs that should be excluded based on the language of the parties' contract. Accordingly, FHR is entitled to the full costs detailed in its motion.

In sum, FHR is entitled to $197,203.59 in prejudgment interest and attorney's fees and costs totaling $903,297.92.

## IV.  HYDROCHEM'S MOTION FOR ENTRY OF JUDGMENT AND FOR COSTS

Hydrochem moves for entry of judgment on Lovegreen's contribution claim and for costs pursuant to Rules 54(d)(1).

### A.  Entry of Judgment

Hydrochem requests that this Court enter judgment on the third-party claim brought by Lovegreen. Lovegreen does not object. Accordingly, this portion of Hydrochem's motion is granted, and judgment should be entered dismissing Lovegreen's third-party claim against Hydrochem.

### B.  Costs

"Section 1920 of 28 U.S.C. permits a judge or clerk of court to tax as costs fees of the clerk and marshal, fees of the court reporter, fees and disbursements for printing and witnesses, fees for copies of necessary papers, docket fees, and compensation of court-appointed experts and interpreters." *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 957 (8th Cir. 2007) (quotation omitted). "A prevailing party is presumptively entitled to recover all of its costs." *Id*. at 958 (quotation omitted).

Hydrochem is seeking to recover $51,304.94 for deposition transcripts, a summary judgment hearing transcript, printing, witness fees, and trial document preparation.

### 1. Miscellaneous Non-Taxable Costs

Lovegreen first argues that Hydrochem's requested expenses include a variety of non-taxable costs, such as Westlaw charges, courier, delivery and postage charges, and travel costs. Hydrochem has clarified in reply that it is not seeking to recover these challenged expenses, and the Court has not included them in the total award given below.

### 2. Transcript Fees

Lovegreen next argues that the only deposition transcript that is taxable is that of Billy Cox, because it was the only one used as a trial deposition. The Eighth Circuit has indicated, however, that "[e]ven if a deposition is not introduced at trial, a district court has discretion to award costs if the deposition was necessarily obtained for use in a case and was not purely investigative." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (quotation omitted). Here, the parties dispute eighteen depositions taken by Hydrochem. Of these, sixteen of the deposed witnesses either testified at trial or had a portion of their depositions admitted into evidence. The Court concludes that such depositions were thus "obtained for use in [this] case," and that the associated costs are recoverable. While the remaining two depositions were taken of individuals who did not testify at trial, both Lovegreen and FHR initially indicated to the Court that they intended to call them as witnesses. Accordingly, the Court finds that these depositions were also reasonably necessary for use in this case, and that Hydrochem is entitled to recover the

associated costs for these depositions as well.  The total recoverable amount for these depositions is $7,666.75.

As to the transcript for the summary judgment hearing, Lovegreen summarily asserts that the associated costs for this transcript are not taxable.  Lovegreen offers no further factual or legal basis for this argument.  "Transcripts of court hearings fall within the scope of § 1920(2), but like depositions, they are only taxable as costs if they were necessarily obtained for use in the case."  *City of Sterling Heights v. United Nat'l Ins. Co.*, No. 03-72773, at *6 (E.D. Mich. Apr. 3, 2008) (quotation omitted).  Here, Hydrochem relied on portions of this transcript in its successful motion for judgment as a matter of law.  Accordingly, the Court finds that Hydrochem is entitled to its expenses for the summary judgment hearing transcript as well.  The recoverable expense for this transcript is $66.16.

### 3.    Expert Witness Fees

Finally, Hydrochem seeks witness fees totaling $38,724.28 for the testimony of Thomas Kocurek, Billy Cox, and Randy Brown.  Lovegreen responds that the expenses for Hydrochem's witnesses should be limited to $40 per day, in accordance with 18 U.S.C. § 1821(b).

In support of the recoverability of these expenses, Hydrochem cites to a series of Eighth Circuit cases affirming a district court's discretion to exceed the statutory limit.  *See, e.g.*, *Coleman v. City of Omaha*, 714 F.2d 804, 809 (8th Cir. 1983).  All of those cases, however, preceded the Supreme Court's decision in *Crawford Fitting Co. v. J.T.*

*Gibbons, Inc.*, 482 U.S. 437 (1987).   In *Crawford*, the Supreme Court held that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."   *Id.* at 438.   Here, Hydrochem has not directed this Court to any statutory or contractual authority that would justify this Court departing from the statutory limit set by 28 U.S.C. § 1821.   Accordingly, Hydrochem is entitled to $40 for each day that its witnesses attended trial.   28 U.S.C. § 1821(b).   Lovegreen contends that this amounts to three days, and Hydrochem does not challenge this assessment.   Thus, Hydrochem is entitled to $120 in witness expenses.

### 4.      Additional Expenses

Hydrochem also seeks $1,632.42 for printing and copying costs and $3,215.33 in costs incurred in preparing documents for trial.   Those costs fall within the categories enumerated in § 1920, and are not specifically challenged by Lovegreen.   *See* 28 U.S.C. § 1920(3)-(4).   Accordingly, these portions of Hydrochem's request are granted.

In sum, Hydrochem is entitled to $12,700.66 in taxable costs.[6]

### ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant Lovegreen Turbine Services, Inc.'s Motion for Judgment as a Matter of Law, or, in the Alternative, For a New Trial [Docket No. 261] is **DENIED**.

---

[6] $7,666.75 + $66.16 + $120 + $1,632.42 + $3,215.33 = $12,700.66.

2.      Plaintiff Flint Hills Resources LP's Motion to Amend Judgment to Add Prejudgment Interest and Expenses and Attorney's Fees [Docket No. 271] is **GRANTED in part**.

4.      The Court **AMENDS**  the Judgment entered in this case [Docket No. 270] to include the following:

> Lovegreen Turbine Services, Inc. is ordered to reimburse Flint Hills Resources, Inc. for $903,297.92 in attorney's fees and costs, and to pay Flint Hills Resources, Inc. $197,203.59 in prejudgment interest.

3.      Third-Party defendant Hydrochem Industrial Services' Motion for Entry of Judgment and for Costs [Docket No. 284] is **GRANTED in part**.

4.      The Clerk of Court is **DIRECTED** to enter a separate judgment dismissing Lovegreen Turbine Services, Inc's third-party claim against Hydrochem Industrial Services and ordering Lovegreen Turbine Services, Inc. to reimburse Hydrochem Industrial Services for $12,700.66 in taxable costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 29, 2008
at Minneapolis, Minnesota.

_____s/ John H. Tunheim_____

JOHN R. TUNHEIM
United States District Judge